Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED ✓    LODGED ___
RECEIVED    COPY ___

DEC 2 2 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

District of Arizona

Phoenix Division

Nona Bolanile Fayola Scott

_____
Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*
**-v-**

Yuma Elementary School District No. 1

_____
Defendant(s)
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.    **CV22-02166-PHX-DWL**

_____
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.    The Parties to This Complaint**

**A.    The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Nona Bolanile Fayola Scott |
| Street Address | 2350 South 8th Avenue, A101 |
| City and County | Yuma, Yuma County |
| State and Zip Code | Arizona 85364 |
| Telephone Number | (928) 366-3030 |
| E-mail Address | sambadelights@gmail.com |

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | Yuma Elementary School District No. 1 |
| Job or Title *(if known)* | Local Government Entity |
| Street Address | 450 West 6th Street |
| City and County | Yuma, Yuma County |
| State and Zip Code | Arizona 85364 |
| Telephone Number | (928) 502-4300 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## C.      Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Yuma Schools Transportation Consortium |
| Street Address | 8550 East 24th Street |
| City and County | Yuma, Yuma County |
| State and Zip Code | Arizona 85365 |
| Telephone Number | (928) 502-8840 |

## II.     Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒      Other federal law *(specify the federal law)*:

Section 1981 of the Civil Rights Act of 1866, 42 U.S.C § 1981

☒      Relevant state law *(specify, if known)*:

A.R.S. 13-2907.01 False Reporting

☐      Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Other acts *(specify)*:    Harassment, Prohibited Work Practices

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

September 2019 - September 2021

C.    I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☒ is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☒ race          African-American
- ☒ color         Light-Skinned
- ☒ gender/sex    Female
- ☐ religion
- ☐ national origin
- ☐ age *(year of birth)*          *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

I, Nona Scott, was hired by Yuma Elementary School District No. 1 (YESD1) to be trained and work for their transportation department, a detached building known as Yuma Schools Transportation Consortium (YSTC), as a school bus driver. I was employed from May 2019 to October 12, 2021. My duties included at least three bus inspections before driving the bus, before our afternoon route, and right before we go home. These are known as Pre-Trip, Secondary, and Post-Trip respectively. Bus drivers are trained to call in or write up repairs needed on our bus. We must also call in any incident involving our bus, the students on the bus, or ourselves. This also means we are to call in suspicious activity that goes on outside the bus. Bus drivers are also told we do not have seat belts on our buses or bus aides, except for Special Needs routes. We are responsible for knowing the names of the students on our bus as well as disciplining them. At the beginning of every school year, we are to inspect the body of the bus and make notes of its condition. Bus drivers are required to have a daily log. We are to record the number of students who boarded our bus, which route, what time of day, and the start and end times of the route. We are trained to call in for help if our buses are about to go over capacity, and that help will arrive. A week before school begins, bus drivers attend a mass training session that may have different keynote speakers in attendance. After school starts, bus drivers are told to go onto the district site and complete their video training course that covers issues like school bus boarding standards and various workplace ethics and safety issues, including hostile work environments and sexual harassment.

2019 - 2020  School Year
The first act of harassment

September 2019,  I was harassed by Sandra McElhaney over the existence of a stop sign on the Westbound corner of 11th St and 14th Avenue, after the debriefing to McElhaney on a traffic incident that occurred the previous day. McElhaney, an older Caucasian woman with over 15 years of experience in the transportation department, is the supervisor of Safety and Training. McElhaney complimented me on perfectly executing emergency protocols after reading my incident report.  I recounted the moment I drove school bus B-69 Northbound on 14th Avenue and had to make a wider turn from 14th Avenue onto the Eastbound lane of 11th Street due to cars parked too close to the corner. I told McElhaney that as I turned onto 11th Street, a pickup truck, coming westbound on 11th street, sped through the stop sign at the corner, provoking the brake. McElhaney checked my speeds and remarked there were no issues of speeding. As I began to leave the office, McElhaney told me, "too bad there's no stop sign there."  I replied and told McElhaney that there is a stop sign at that corner. McElhaney then pointed to her computer screen, the software did not show a stop sign. I reiterated that there is a stop sign at that corner and that I didn't understand why it didn't show on the software. McElhaney told me that there is no stop sign at the corner because it doesn't show on the software and that the software always shows where stop signs are.

The second act of harassment and more continued on additional paper.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.        It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

July 7, 2022

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*    9/28/2022    .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

WHEREFORE Scott prays that the Court enter judgement against the Defendant and, further, grant her the following relief:

Order Defendant to centralize all employee-on-employee concerns to Human Resources to protect employees from immediate superiors of their respective departments;

Order Defendant to quarterly bring in third party representation to educate all employees on importance of cultural differences and viewpoints as Yuma, Arizona is 65.5% Latino, 29% Caucasian, and 2.7% African-American;

Order Defendant to objectively review all proposed procedural changes from transportation department to weed out practices that can result in disparate impact;

Order Defendant to require umbrella safety and emergency procedures to all departments that interact with students;

Order Defendant to require bus aides and seat belts for all student transportation vehicles;

Order Defendant to quarterly review bus logs to prevent overcrowding and ensure safety; and

Award Nona Scott full monetary amount of $200,000,000 ($200 million) in punitive damages for injuries, and mental and emotional distress caused by the acts of discriminatory conduct caused by Defendant over the duration of her two years of employment, pursuant to and within statutory limitations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C § 1981 to rebuild and make Scott's life whole again.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        12/20/2022

Signature of Plaintiff

Printed Name of Plaintiff    Nona B.F. Scott

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

I, Nona Scott, was hired by Yuma Elementary School District No. 1 (YESD1) to be trained and work for their transportation department, a detached building known as Yuma Schools Transportation Consortium (YSTC), as a school bus driver. I was employed from May 2019 to October 12, 2021. My duties included at least three bus inspections before driving the bus, before our afternoon route, and right before we go home. These are known as Pre-Trip, Secondary, and Post-Trip respectively. Bus drivers are trained to call in or write up repairs needed on our bus. We must also call in any incident involving our bus, the students on the bus, or ourselves. This also means we are to call in suspicious activity that goes on outside the bus. Bus drivers are also told we do not have seat belts on our buses or bus aides, except for Special Needs routes. We are responsible for knowing the names of the students on our bus as well as disciplining them. At the beginning of every school year, we are to inspect the body of the bus and make notes of its condition. Bus drivers are required to have a daily log. We are to record the number of students who boarded our bus, which route, what time of day, and the start and end times of the route. We are trained to call in for help if our buses are about to go over capacity, and that help will arrive. A week before school begins, bus drivers attend a mass training session that may have different keynote speakers in attendance. After school starts, bus drivers are told to go onto the district site and complete their video training course that covers issues like school bus boarding standards and various workplace ethics and safety issues, including hostile work environments and sexual harassment.

## *1. Years of Harassment*

### *2019 - 2020  School Year*

### *The first act of harassment*

a. September 2019,  I was harassed by Sandra McElhaney over the existence of a stop sign on the Westbound corner of 11th St and 14th Avenue, after the debriefing to McElhaney on a traffic incident that occurred the previous day. McElhaney, an older Caucasian woman with over 15 years of experience in the transportation department, is the supervisor of Safety and Training. McElhaney complimented me on perfectly executing emergency protocols after reading my incident report.  I recounted the moment I drove school bus B-69 Northbound on 14th Avenue and had to make a wider turn from 14th Avenue onto the Eastbound lane of 11th Street due to cars parked too close to the corner. I told McElhaney that as I turned onto 11th Street, a pickup truck, coming westbound on 11th street, sped through the stop sign at the corner, provoking the brake. McElhaney checked my speeds and remarked there were no issues of speeding. As I began to leave the office, McElhaney told me, "too bad there's no stop sign there."  I replied and told McElhaney that there is a stop sign at that corner. McElhaney then pointed to her computer screen, the software did not show a stop sign. I reiterated that there is a stop sign at that corner and that I didn't understand why it didn't show on the software. McElhaney told me that there is no stop sign at the corner because it doesn't show on the software and that the software

always shows where stop signs are.

### *The second act of harassment*

b.  On or around October 24, 2019, Sandra McElhaney brought me into her office to have a meeting regarding the sexual harassment claim I submitted, dated about October 22, 2019.  I, being visibly distraught and showing signs of discomfort, gave McElhaney specific details of how an older Caucasian woman known by the names Mariam and Marianne, was touching me down my back while we were in the breakroom. McElhaney then had me re-enact the touching I detailed in my sexual harassment claim on an office chair. I recounted moments where McElhaney would smirk while I provided details of the harassment and while re-enacting the incident on the office chair. McElhaney told me to send her an email, through the district email, of what I told her in the meeting. She, McElhaney, told me this will be sent to Ron Schepers, an older Caucasian male who is the director of the transportation department for 7+ years, where they will then have a meeting about it. A few days later, I noticed the accused, Mariam, still approaching me with no notable difference in behavior or caution. I kept my distance from the accused.  McElhaney did not contact me on anything surrounding the investigation, including supportive measures. The accused, Mariam, stayed employed at the transportation department till the second half of the 2020 - 2021 school year.  Mariam was terminated for a lesser offense when she backed her bus into the pickup truck of an older Caucasian

Vietnam Vet, by the name of Pete. Pete was showing a group of people, me included, the damage done to his truck when Mariam hit it. I noticed no remarkable damage had been done to the truck.

c.  A few months later, in May, Sandra McElhaney allowed an older Caucasian woman, a bus driver named Joann, two weeks off for reasons unknown to me. Me, Joann, and another Caucasian man named Nate, all drove our elementary route for the same school. Both Nate and I noticed odd behavior from Joann during the bus line-up, as we waited for students to board. As we were waiting for students to board the buses, Joann loudly announces on the two-way radio that the Special Needs bus behind her isn't verifying their assigned students. Nate joins me on my bus and we kept listening. We're both very confused about why Joann is acting like this. After everything was settled, Joann apologizes to dispatch, but not the Latino driver and bus aide in the Special Needs bus. The next day, Joann is acting out of sorts again. Nate joins me on my bus and he asks me what's going on with her. I told him I have no idea. Both Nate and Joann also have a route for the same high school, he told me she was acting strange then too. Joann's behavior continues the following day. A few days pass with no sign of Joann. Nate finally tells me he saw Joann march into Sandra's office. We both believed Joann was either fired or quit, however, Joann came back to work after two weeks.

## *2020 - 2021 School Year*

### *The third act of harassment*

d. On or about November 20, 2020, I was involved in a parking incident when the rear of my bus, a substitute rear-engine bus, T29, touched the end of a neighboring front-engine bus, T34, in the YSTC bus lot in the late afternoon. I reported the incident and a Latino mechanic came to inspect the scene. I was found not at fault for the incident as the driver of T34, a Latina woman named Kimberly who uses the bus in the afternoon, was found to have parked too far from the spot's line. I was also told the regular driver of T29 was, a Latino man, named Rene. On or about November 23, 2020, I boarded T29 in preparation for Secondary Inspection. I noticed two of my belongings, two marked heavy-duty spray bottles with "B69" on them in large black writing, were vandalized. Both bottles were found with their necks crushed into the body. I noted the bottles were found in the storage compartment, which faces the back of the driver's seat, still in the upright position as I left them. I tested how the bottles could have been damaged. I tested how fast the driver's seat can move back and found it did not have the force to cause the damage. I also checked the other bottles, unmarked and heavy-duty, in the storage compartment. I found no damage was done to them. I contacted McElhaney, through district email, and told her I felt unsafe and believed the damaged bottles were an act of retaliation for the incident on November 20th. I never heard back from McElhaney. Bus T29 is equipped with

cameras on board.

### *The fourth act of harassment*

e. On December 14, 2020, I, along with three other bus drivers, was assigned to work at Woodard Junior High to complete our eight-hour work day during the Remote Learning initiative during COVID restrictions. During this time a fellow bus driver, a Caucasian woman named Rhodesia, joined our group as a replacement for another driver who had to leave due to a COVID emergency in her family. The head groundskeeper, an older Latino man named Ricardo, told Rhodesia that I would be in charge of our bus driver group while we worked at the school. Ricardo knew me during my time as a substitute teacher for YESD1. We were assigned to paint and since Rhodesia was new to the group, I informed her of when our breaks were and how long they were for. This was something the original group was all fine with. Rhodesia immediately became uncooperative. On the first day, the 14th, Rhodesia approached me and said, "why do you get to be in charge (direct quote)." Later that same day, an hour before our lunch break began, Rhodesia approached me again. She told me she has to go home for an hour because she has an appointment to get her eyebrows done. When I told her no, Rhodesia continued to argue. When I told Rhodesia to ask Ricardo if she can leave, she said she didn't understand why she needed permission to leave. I gave her the explanation that it was for the sake of accountability as a team. That we all leave for lunch at the same time as well as if our

bosses Ron Schepers and Rachel Soliz (now Smith), a Latina woman who transferred to the transportation department from the district office in August 2019, were to check in on us, we would need to know where the others are. Rhodesia asked Ricardo to leave. Mirabel, a Latina woman and one of the bus drivers in our group, was near Rhodesia when she asked Ricardo for permission to leave. Mirabel told me Ricardo told Rhodesia to get permission from me, but Rhodesia just left instead.

f.  On December 15, 2020, during our lunch break, Rhodesia sat next to me on the bench. She posed another question. This time Mirabel was seated to my left and another janitor, a Caucasian man named Tom, was seated in front of me at another bench. She asked why is it that we drivers get an hour lunch while the groundskeepers get half-hour lunches and why she can't leave the grounds whenever she feels like going somewhere. That day, Rhodesia would only work for 5 minutes before going to get water from her car for 10 minutes while everyone else continued working.

g.  On December 16, 2020, Mirabel approached me with a message from Rhodesia. Rhodesia texted Mirabel and told her to tell me to bring her, Rhodesia, her purse. I refused. I told Mirabel that if Rhodesia really wanted her purse, she could have asked Mirabel for it or had one of the groundskeepers open the gate so she, Rhodesia, could get it herself.

h. On December 17, 2020, Rhodesia was kicked off of school grounds for refusing to work by Ricardo, after I reported to him that I had enough of her behavior. As Ricardo was telling her to leave, Rhodesia argued back and began to call for me to tell Rachel we were being mistreated. Ricardo finally got Rhodesia to leave. I asked him what happened. He said he tasked Rhodesia with moving an empty plastic trash can and she refused. I left the area to call Rachel and debrief her on the incident. I didn't mention being harassed by Rhodesia due to failed attempts in the past. I cried after everything was over.

### The fifth act of harassment

i. January 21, 2021, I was told by Valerie Kampf, a Caucasian woman who does Dispatch and doubles as a bus driver, that I would have to speak to Sandra if I wanted to change my work hours. After entering Sandra's office, I explained to her that I could no longer do return field trips (field trips where you take the students to and from their destination) and that I would no longer be able to do After School (where you take extracurricular students home). The reason given was my mother; she is in her 70s, has dementia, type II diabetes, neuropathy, arthritis, hypertension, high blood pressure, enlarged heart, blasted knees, and damage to her brain that affects her memory. I also told Sandra that my mother has had incidents with fire. After explaining this, Sandra tells me that employees aren't allowed to change hours and that perhaps she should take me off my route entirely. I noticed Sandra smirking.

***Disparate Impact and False Reporting***

***School Year 2021 - 2022***

j.  The school year began with an extreme shortage of bus drivers due to COVID-related issues. In order to cover the bus routes, the transportation department decided all school bus drivers will have to double up on at least one route. This meant I had to do a double route for my Cibola run. During this time I was also placed back onto student pick-up for After School activities for high school. I would call my mother to check in on her security during this time. This also meant reporting to work at an earlier time in the morning so I can cover my extra route and my regular route on time; adversely it meant that I would be 30 to 40 minutes late picking up the elementary students in the afternoons. I submitted a concern with the transportation department suggestion box that this new scheduling will fatigue the drivers and cause accidents. I suggested the department hire part-time drivers to cover After School activities and field trips.

k.  On September 23, 2021, my mother had another incident with fire when she left cloth near a hot burner. Later that afternoon, during my elementary route, I got into an incident where I had to brake hard. I called dispatch for assistance after assessing the students and becoming aware some of them complained of pain, however, when

dispatch asked if I needed an ambulance I was told "never mind. Go find a place to park." Dispatch wanted me to call a Caucasian woman at the office named Wendy on my phone, as she would be the one giving me instructions. Wendy informed me that these were new emergency procedures. The instructions Wendy gave me were to take down the names of those complaining of pain as they left the bus and report those names back to the office. Wendy wanted me to tell the students, and parents, that they got into an incident however it's up to the parent to take them to the hospital or not; that the office would call those parents later with details. Dispatch wanted me to continue with my route after I informed the students and parents. As I prepared to leave, a parent came to my door and told me she called the police because students were involved. I told dispatch a parent called the police. Dispatch told me to leave anyway. I told dispatch I could not as the police were already there. A total of 4 police officers arrived. I was harassed by one who insisted I didn't contact my office, a Caucasian man, who was motioned to stand down by his superior, an African-American man who is a Sergeant. An ambulance showed up and checked out the students reporting pain. Everyone checked out fine.

1. I repeatedly made calls to dispatch to ask if the parents have been called so they could come to pick up their children. They said they issued a message on the new system. When the parents arrived, they said they were not contacted, but had to track me down. I was harassed by the same officer, accusing me of not contacting my office. I was holding my two-way. He took my statement and switched a brake hard

for a hard brake. He would not allow me to release the students to their parents after I've cleared permission with dispatch and paramedics. Another officer allowed me to release them. I was in unfit condition to drive back to the bus lot at the transportation department. I was escorted back. There, I was told to write an incident report and I would be on administrative leave and wait to be called in. It took me a while to write the report. I was having trouble remembering events. It ranged from foggy to non-existent. By the end, I wrote three numbered sheets for the report. I included what I believed I saw and the harassment from the officer.

m. That following Tuesday, I got a call from the transportation office to report to Luciano at the district office. At that moment the harassing officer shows up at my apartment and arrests me, citing 21 counts of Assault, 44 counts of Endangerment, and 1 count of Lying to an Officer. At the police station, I told him I didn't lie. That a hallucination provoked me to brake-hard. That I've seen these before when I'm very stressed. I told him earlier that day my mother had a fire incident and that she's in her 70s and suffers from dementia. I told him that I wasn't able to use my coping skills for my Anxiety and Depression due to fatigue from work.

n. I was later sent to county jail for arraignment. There, I spent over 13 hours handcuffed to a bench while waiting to be processed and placed in an isolated cell for suicide watch. After arraignment the next day, I made bail and was waiting for release. I overheard people in the prison talking about how the "bus driver," was in

there with them. This told me news of my incident is now out. After the release, my friend told me the news released a video of the incident.

o. After hiring a lawyer, I was shown the police investigation report and I called my friend to come and pick me up from home because I was suffering from a PTSD episode. When I met with my lawyer, they wanted me to take notes on the bus footage because they needed expert eyes to detail the activity.

p. I transcribed the activity on the bus footage and checked out the details in the police investigation report. I noticed Ron Schepers made a statement on September 24, 2021, regarding activity on my bus where the officer states: "Before showing us the video Schepers gave his assessment of the incident. Schepers said as he reviewed the video, he can see Scott pulled into the parking lot and the children are not standing or anything unruly. Schepers said the children were a little loud but nothing to warrant any safety issues." - page 5 of the Reduced Redacted Police Investigation Report.

q. Video footage shows multiple safety issues from students. I noted the times, their names, what they were wearing, what they were doing, and which camera the student could be seen in. In total, there were 7 safety issues at play while I was driving.

r. I also noticed the footage shown by the news had sound bites of the students spliced into different parts of the incident and the timing of events were edited.

s. I received a Psych Eval, where it was assessed that I do have a long history of PTSD, Anxiety, and Depression as well as reoccurring hallucinatory episodes.

t. There was no trial and a plea deal was reached. Charges were reduced to No Contest on 1 count of Misconduct. Three years of unsupervised probation with an Aside for Dismissal so long as I continue voluntary counseling.

u. I filed a Racial Discrimination inquiry with the EEOC. I was advised to submit additional documentation that would show a pattern of discrimination. On July 7, 2022, I signed off on the charge for discrimination and submitted a 57-page document detailing the pattern of discrimination I faced during employment, including all events claimed within this complaint as well as screenshots of the bus footage. On September 28, 2022, I was given the Notice of Right to Sue letter from the EEOC.

### *Claims for Relief*

i. Harassment from supervisor was willful and aggravated employee, Nona Scott's, trauma. Supervisor is a seasoned supervisor of department and was trained on and knowledgeable of software program's faults upon implementation and everyday application before day of debriefing.

ii. Retaliation towards employee from supervisor during a protected activity. Supervisor willfully caused more harm and injury by not following investigation guidelines outlined in Title IX of the Education Amendments of 1972 as well as guidelines outlined in the YESD1 Governing Board Policies.

iii. Supervisor willfully caused more harm and injury during protected activity when requiring employee to re-enact touching.

iv. Supervisor willfully caused more harm and injury to employee for protected activity when no evidence of an investigation was found.

v. Supervisor willfully caused more harm and injury to employee during protected activity by not providing supportive measures or relief of distress.

vi. Supervisor willfully caused more harm and injury to employee for protected activity when no actions or investigations were taken against accused.

vii. Supervisor willfully caused harm and injury to employee, Nona Scott, for protected activity when it was shown that supervisor understood the importance of providing leave to distressed employees when supervisor granted a Caucasian employee time off.

viii. Supervisor willfully caused harm and injury to employee, Nona Scott, when supervisor ignored second harassment claim, a protected activity.

ix. Supervisor willfully retaliated against employee during employee's times of need. Retaliation against Nona Scott was for no other reason but for the employee's race.

x. Retaliation and not enforcing policies and benefits of an employment contract that is enjoyed by Caucasian co-workers are violations of Section 1981 of the Civil Rights Act of 1866, as codified, 42 U.S.C § 1981 with given "but for," causation and allows up to four years to file from date of incident.

xi. Trauma caused by Safety and Training supervisor created additional injury and aggravation to employee's coping skills for treated PTSD, Anxiety, and Depression.

xii. The disparate impact of the new emergency procedure, approved by the department director, resulted in the arrest, mental and emotional distress, and aggravated trauma of African-American employee, Nona Scott, when in a predominately Latino neighborhood while accosted by a Caucasian officer. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e - 17.

xiii. Failure to contact emergency services, as part of new practice, prompted further

action from outside sources that caused harm and injury to employee, Nona Scott.

xiv. Requiring employee to release injured students, to parents, without clearance of professional care, prompted further actions from outside sources that caused harm and injury to employee, Nona Scott.

xv. Instructing employee to leave scene after being informed of police being called, placed employee in danger due to, Nona Scott, being African-American.

xvi. False reporting a statement to mislead police, from department director, of actions on bus contradicts bus footage showing behavior considered "distracting" to a bus driver, lending full blame of incident onto employee, Nona Scott. A.R.S. 13-2907.01 *It is unlawful for a person to knowingly make to a law enforcement agency of either this state or a political subdivision of this state a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.*

xvii. Failure to secure situation resulted in release of confidential information to the media, where manipulated footage was published, and caused further harm, injury, mental, and social anguish to employee, Nona Scott.

xviii. Treatment of employee, Nona Scott, for duration of employment at YESD1's

transportation department, resulted in Nona Scott to seek counseling, and no longer able to handle going out in public areas, hearing school bells, passing by a school, seeing a school bus, or going out during pickup and dropoff hours without triggering her PTSD and  Anxiety attacks forcing Nona Scott to seek immediate counseling.

xix. Damage suffered by discriminatory conduct of YESD1 resulted in additional injury to Scott's lifestyle as Anxiety attacks and PTSD has caused Nona Scott to, at times, be unavailable to tend to the needs of her aging mother, who needs help getting to her appointments, needs help with mobility due to neuropathy, needs help with lifting and reaching groceries while shopping, retrieving medications, help with memory problems due to dementia, attending to painful health emergencies, and finances.



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/28/2022

**To:** Nona B. Scott
2350 S. 8th Ave., Apt. A101
Yuma, AZ 85364
Charge No: 540-2022-02200

EEOC Representative and email:     Patricia Miner
Supervisory Investigator
patricia.miner@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 540-2022-02200.

On behalf of the Commission,

Melinda Caraballo
Acting District Director

**Cc:**
Luciano Munoz
YUMA SCHOOL DISTRICT NO. 1
450 W. 6th St.
Yuma, AZ 85364

Robert Haws
Gust Rosenfeld, PLC
1 E WASHINGTON ST STE 1600
Phoenix, AZ 85004

Please retain this notice for your records.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 540-2022-02200 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev. etc.)* | Home Phone | Year of Birth |
|---|---|---|
| Nona B. Scott | (928) 366-3030 | 1980 |

| Street Address |
|---|
| 2350 S. 8th Ave., Apt. A101  YUMA, AZ 85364 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| YUMA SCHOOL DISTRICT NO. 1 | 501+ Employees | (928) 502-4330 |

| Street Address |
|---|
| Transportation Department 450 W. 6th St.  YUMA, AZ 85364 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address |
|---|
| |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |
| Race, Retaliation | 08/01/2019 — 10/12/2021 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the above-named employer in or around August 2019 as a School Bus Driver. Throughout much of my employment, I was one of only two African-American School Bus Drivers employed. From the beginning of my employment I was given an old, broken-down bus to drive while my non-Black peers had newer buses in better condition. In August or September 2019 my supervisor, Sandra McElhaney, falsely asserted I was lying during a debriefing of a traffic incident about an existing stop sign. In September 2019 I submitted a complaint of sexual harassment against a non-Black co-worker, where Sandra McElhaney made me re-enact the experience during the interview and to email her the story; nothing was done; assailant kept approaching me. Assailant stayed working for a full year more until they were fired for bumping into a vehicle of a non-Black employee. In November 2020, my belongings were vandalized by a non-Black co-worker as an act of retaliation for an incident I was found no-fault for; I emailed Sandra McElhaney about this and nothing was done. In January 2021, I was given fewer work hours than my non-Black peers regardless of work being available for me. On or around September 23, 2021 I reported students in pain while I was in acute distress; when I called the transportation office via radio they insisted that I continue on my route and tell the parents the office will call them later and that it's up to the parent what they want to do with their child's condition rather than the office request medical assistance for the students. Police were called by a

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| _____  _____  *Date*                *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br><br>EEOC<br><br>FEPA | Agency(ies) Charge No(s):<br><br>**540-2022-02200** |
|---|---|---|

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

parent, and I was harassed by a police officer. The Director of my department, Ron Schepers, lied to the police and leaked the camera footage from my bus to the media, where it was doctored, and Ron was temporarily suspended, but on October 12, 2021 my employment was terminated. I believe that I was harassed, subjected to unequal terms and conditions of employment, and discharged from employment due to my race (Black/African-American) and in retaliation for my prior complaint of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br><br>_____<br>*Date*          *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |